IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN C. HURLBURT                                        PLAINTIFF

            v.                  Civil No. 10-5067

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                          DEFENDANT

### MEMORANDUM OPINION

        Plaintiff, John Hurlburt, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying his claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In this judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.    **Procedural Background:**

        The plaintiff filed his application for DIB on October 30, 2006, alleging an onset date of

October 13, 2005, due to neck problems, depression, and memory loss. Tr. 76-80, 104, 120-121,

138-140, 144-145, 162-165.  An administrative hearing was held on November 13, 2008.  Tr.

7-29.  Plaintiff was present and represented by counsel.  At this time, plaintiff was 41 years of

age and possessed the equivalent of a high school education. Tr. 10, 195.  He had past relevant

work ("PRW") experience as a security guard, juvenile office, janitor, production worker, and

training/sales route driver.  Tr. 105, 112-119, 170.

        On March 18, 2009, the Administrative Law Judge ("ALJ") concluded that, although

severe, plaintiff's chronic neck pain and depressive disorder did not meet or equal any Appendix

AO72A
(Rev. 8/82)

1 listing.  Tr. 37-38.  The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform light work involving frequent handling and gripping.  Tr. 39-42. From a mental standpoint, Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions; respond appropriately to usual work situations and routine work changes; and, interact appropriately with the public, co-workers, and supervisors. With the assistance of a vocational expert, the ALJ then found that plaintiff could perform work as an airline security representative/pre-board screener, cashier II, and retail sales attendant.  Tr. 43.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on February 22, 2010.  Tr. 2-4.  Subsequently, plaintiff filed this action.  ECF No. 1.  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 10, 11.

## II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742,

2

747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.   <u>The Evaluation Process</u>:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age,

3

education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Discussion**:

Of particular concern to the undersigned is the ALJ's failure to properly consider Plaintiff's memory problems and his conclusion that this impairment was not severe.  An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. § 404.1521(a).  If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007).

On January 24, 2006, Plaintiff indicated he had recently been hospitalized due to confusion. Tr. 185.  At that time, he was found to have elevated ammonia levels.  An ultrasound of his abdomen was suggestive of fatty liver disease and his transaminases were slightly elevated.  Plaintiff was treated with Lactulose and his confusion resolved temporarily.  Following his discharge, Plaintiff reported additional episodes of confusion, despite taking his medication as prescribed.  He stated that he was in Wal-Mart one day and forgot why he was there and then became tremulous.  Plaintiff also reported difficulty with insomnia and a general lack of energy.  Dr. Paschall wanted to rule out Wilson's disease since Plaintiff was confused but not cirrhotic.  As such, he ordered further lab tests to check Plaintiff's levels and a CT of his abdomen to more definitively rule out any liver lesions.  Dr. Paschall also increased Plaintiff's dosage of Lactulose.  Tr. 185.

4

On February 23, 2006, Plaintiff returned for further treatment concerning his confusion and mildly elevated ammonia level. Tr. 184. Plaintiff had quit taking his Lactulose approximately three days prior because it gave him diarrhea. He continued to have problems thinking of words he wanted to say, breaking out in a sweat and becoming tremulous, and then becoming quite confused. Dr. Paschall indicated that he was beginning to think that Plaintiff's confusion was not related to his liver disease, rather due to an inborn area of metabolism. With the description of his episodes being associated with sweating and tachycardia, he also believed pheochromocytoma (a rare tumor of the adrenal gland tissue) should be ruled out. He referred Plaintiff to a neurologist, prescribed Xifaxan, and ordered follow-up blood work to check Plaintiff's urine and his liver function levels. Tr. 184.

On January 25, 2007, Plaintiff underwent a mental diagnostic evaluation with Dr. Ronald E. McInroe. Tr. 194-198. Plaintiff stated that he had applied for disability due to "neck pain and problems with memory." He indicated that his memory had begun declining 15 or 16 years prior, following an automobile accident for which he received no medical treatment. Plaintiff also reported suffering from uncontrollable high blood pressure and excessive ammonia levels. In addition, he felt depressed, which manifest itself with an increased appetite, low energy, sleep disturbance, and variability in weight. Plaintiff reported hospitalization for depression in 1992, due to a divorce. However, no other treatment for psychiatric or psychological symptomatology was reported. Plaintiff stated that he was currently taking Trazadone with no significant improvement.

Plaintiff's mood was variable and euthymic, his speech rate and tone normal, and his thought processes logical, coherent, and goal-directed. He was oriented in all spheres, but was

AO72A
(Rev. 8/82)

a poor historian.  His recall was adequate, as was his general fund of knowledge.  Although Plaintiff complained of depression, Dr. McInroe was of the opinion that his depression was not significant enough to affect his adaptive functioning significantly.   Further, if Plaintiff's depression were treated, he felt Plaintiff's condition would improve.  Dr. McInroe did note deficits in Plaintiff's ability to attend and concentrate, and stated he might also be experiencing deficits in short-term auditory memory functioning.  He diagnosed Plaintiff with depressive disorder, and bereavement.  Dr. McInroe also felt Plaintiff should undergo further assessment to rule out amnestic disorder (loss of memory).  Overall, he found Plaintiff to have the capacity to communicate and to interact without others in a socially adequate manner with no significant difficulties relating in interpersonal relationships.  However, because of his deficits in attending and concentrating, Dr. McInroe determined Plaintiff may not be able to manifest sustained attention over a significant length of time.  Tr. 194-198.

On May 11, 2007, Plaintiff underwent a psychiatric assessment with Dr. Mark Baltz.  Tr. 293-297.  He reported continued problems with his memory since 2001.  Dr. Baltz noted that Plaintiff had been a previous client of Ozark Guidance Center, but he claimed no memory of a previous evaluation or treatment there.  He also seemed annoyed at not being able to remember things and always having to write things down.  Plaintiff denied feeling significantly depressed most of the time, stating if he got down, he quickly forgot why he was depressed.  He did, however, report a decreased level of interest and sense of pleasure in usual activities, chronic sleep disturbance, and variable energy levels.  Plaintiff indicated that his treating doctor had prescribed Trazodone, but this medication caused "weird" side effects so he had stopped it. Plaintiff had also tried Lexapro, but often forgot to take it as prescribed.

6

Plaintiff reported several head injuries with possible concussions, but denied receiving medical treatment for any of these. Tr. 293-297. He also stated that he suffered from degenerative disk disease, spurs in his neck and back, elevated blood pressure, elevated ammonia levels, and liver damage. At present, Plaintiff was taking Oxycodone, Methacarbamol, and a five-day course of Prednisone prescribed at a recent ER visit for neck pain. Dr. Baltz noted that Plaintiff's psychomotor activity appeared normal with no evidence of physical discomfort. His speech was coherent and goal-directed, with normal rate and volume. His flow of thought was circumstantial and his reporting was rather scattered and somewhat difficult to follow. Plaintiff's thought content reflected some grandiosity/ideas of self-importance, a sense of entitlement, with a tendency to demean or devalue others, including making derogatory statements about OGC staff. Plaintiff's attitude was rather arrogant and haughty. His intellectual functioning seemed in the average range though he indicated he had some type of testing in the past that showed he had a very high IQ. He had fair attention, impaired concentration, and poor memory. Dr. Baltz diagnosed Plaintiff with cognitive disorder not otherwise specified, possibly due to post-concussional syndrome; dyssomnia not otherwise specified; bereavement; rule out depressive disorder; rule out ongoing alcohol abuse; rule out amphetamine abuse; and, narcissistic personality disorder. He indicated that Plaintiff would proceed with getting a referral for a formal memory evaluation and possible neuropsychological testing. Plaintiff was also to continue with individual therapy services and prescribed Rozerem. As Plaintiff did not appear to have a significant depressive disorder and there did exist the possibility of substance abuse and some potentially serious health problems, Dr. Baltz deferred prescribing psychotropic medication until further information was obtained. Tr. 293-297.

7

On June 15, 2007, Plaintiff stated that he could not tolerate the Rozerem because it wired him.  Tr. 291-292.  He continued to complain of problems with memory, task completion, disorganization, and distracting flashbacks of things from his past.  These thoughts were not necessarily dysphoric, rather merely intrusive, interfering with his ability to continue with whatever task he was pursing.  Plaintiff also reported continued difficulty sleeping, sometimes secondary to pain.  Dr. Baltz assessed Plaintiff with cognitive disorder not otherwise specified, possibly due to post-concussional syndrome, dyssomnia, bereavement, and possible depression.  He also assessed Plaintiff with a GAF of 50.  Dr. Baltz noted that Plaintiff did not have insurance coverage at this time, so neurological testing and MRI's would not be possible.  Plaintiff also stated he would have to wait on a referral to the memory clinic.  Dr. Baltz prescribed a trial of Strattera to treat his attention, concentration, and possibly even his cognitive symptoms.  He also prescribed Doxepin to treat Plaintiff's depression.  Tr. 291-292.

Plaintiff also stated that he had to write things down and set alarms in order to remember anything.  Tr. 148.  In fact, he indicated that he wrote everything on the glass door at his home, so that others could see it, too, and remind him of what needed to be done.  Before he quit work, Plaintiff reported having to write down his product information, codes, routes or else he was unable to remember his daily assignments.  Tr. 20-21.

While we do generally defer to the ALJ's credibility findings, we also note that Plaintiff's subjective complaints seem to have at least some support in the evaluations completed by Drs. McInroe and Baltz.  And, aside from the non-examining, consultative RFC assessment completed by Dr. Brad Williams, the record is devoid of evidence to indicate how, if at all, plaintiff's memory deficits impact his ability to perform work-related activities.  *See Jenkins v.*

8

*Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). Given that at least two doctors have recommended that Plaintiff undergo formal memory testing to determine the etiology of and limitations imposed by his memory problems, we believe that remand is necessary to allow the ALJ to develop the record further with regard to Plaintiff's alleged memory problems.  Because a significant impairment in this area could significantly erode the types and number of jobs available to Plaintiff, on remand, the ALJ is directed to order a consultative mental assessment to evaluate Plaintiff for memory problems.  *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.).

IV.   **Conclusion**:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 17th day of March 2011.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)